Wells Bros. Co. v. Flanagan.

## Wells Bros. Company v. William Flanagan.

### Gen. No. 13,652.

1. NEGLIGENCE—*how question of proximate cause determined.* As a rule, it is for the jury to determine what was the proximate cause of an injury.

2. NEGLIGENCE—*what not defense to charge of.* It is no defense to a charge of negligence to say that the injury complained of was caused by the negligence of a third person if such injury might have occurred even though the negligence of such third party had not intervened.

3. VARIANCE—*when objection comes too late.* An objection of variance not specifically raised in the trial court cannot be urged on review.

4. INSTRUCTION—*when refusal not ground for reversal.* It is not error to refuse a correct instruction if its substance is contained in another given.

Action in case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed March 9, 1908.

RALPH F. POTTER, for appellant.

B. J. WELLMAN, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court. Appellee sued appellant and the Oscar Daniels Company,

and, September 14, 1906, filed a declaration, averring substantially as follows: The defendants are corporations, and June 5, 1905, were engaged in the erection and construction of a building at Wabash avenue and Madison street, in the city of Chicago, and plaintiff was a laborer working in and about said building, for a subcontractor, and while plaintiff was so employed and was exercising due care for his safety, the defendants negligently caused a piece of timber to fall from a place above where plaintiff was working and strike plaintiff with great force, by reason of which plaintiff was injured, etc. Each of the defendants pleaded the general issue. December 10, 1906, the cause was discontinued as against the defendant, the Oscar Daniels Company, on appellee's motion. The jury found appellant, Wells Bros. Co., guilty, and assessed appellee's damages at the sum of $1,900, and the court, after overruling appellant's motions for a new trial and in arrest of judgment, rendered judgment on the verdict.

The verdict was rendered December 11, 1906, and December 18, 1906, appellee moved the court for leave to file an additional count to the declaration, and the court ordered that the motion be continued till December 22, 1906, notwithstanding which appellee filed what purports to be an additional count December 18, 1906, the day he made the motion. It does not appear from the record, and is not claimed, that any leave was given to file it; therefore, it must be ignored.

The appellant and others were engaged in the erection of an addition to a building in the city of Chicago. Appellant was the contractor for the mason work of the addition, and the Oscar Daniels Company did the iron and steel work. There was no contractual relation between appellant and the Oscar Daniels Company. The appellee was a laborer in the employ of Schiller & Son. It does not appear what work Schiller & Son were employed to do in the erection or construction of the addition. The iron beams of the south wall of the addition were north of the north wall of the old building, leaving a space of about 6

or 7 feet between the north wall of the old building and the south wall of the addition. It was appellant's duty as mason contractor to cut out parts of the north brick wall of the old building, exposing the steel frame work of the wall, so that the Oscar Daniels Company could connect that steel frame work with the steel frame work of the addition. For the purpose, and to receive the brick and other material taken from the north wall of the old building, and also to protect persons who might be below from falling brick and other material, appellant, about a week or ten days before the accident, constructed a scaffold across the space above mentioned, at the sixth floor of the building. This scaffold consisted of stringers crossed by planks. The stringers were 3 by 12 planks lying north and south between the old and new building. On these stringers and lying east and west, were planks 12 to 14 feet in length. The scaffold covered the entire space between the buildings. Before the scaffold was constructed, the Oscar Daniels Company cut a hole in the north wall of the old building, and laid a 3 x 12 plank north and south across the east and west beams, with its south end in the hole. The plank lay next to the west end of the scaffold, when the scaffold was constructed. On this plank the Oscar Daniels Company placed a large derrick with which to raise steel from below. The sill of the derrick was inserted in the hole in the wall, over the end of the plank, and was wedged in, so that while the derrick remained on the plank, the plank was securely held in place. Appellant's servants, in constructing the scaffold, used the plank on which the derrick rested, as a stringer, to support the west ends of the boards at the west end of the scaffold. This they did by nailing a 3 x 4 cleat about 3 feet long onto the plank, and resting the west ends of the scaffold boards on the cleat.

After the Oscar Daniels Company had finished their work at the place where the scaffold was, they removed the derrick to a floor above the sixth floor, and the brick and other material on the scaffold were almost wholly removed, there being left on the scaffold only a few bricks and pieces of timber.

The Oscar Daniels Company had nothing to do with the scaffold, and after that company removed the derrick, it was appellant's work to remove the scaffold, and appellant did remove it after the accident.

June 5, 1905, after the purpose for which the platform had been constructed was accomplished, and after the derrick had been removed by the Oscar Daniels Company, John Kennedy, who was a riveter in the employ of the Oscar Daniels Company, and who had been working at a beam north of the scaffold, stepped on the north end of the plank on which the derrick had rested, which north end was unsupported, for the purpose, as he said, of going to a pail of water on the scaffold, and the plank, by reason of his weight, sank beneath him, when he ran toward the other end, and that sank, and he kept running and finally saved himself. The result was that the scaffold at its west end and south side sagged down, and a piece of plank about 12 inches wide and 3 inches thick fell from the scaffold onto appellee, who was working in the basement, and seriously injured him.

The propositions argued by appellant's counsel are: (1) No act or omission of appellant was the proximate cause of the accident; (2) there is a variance between appellee's evidence and the declaration; (3) and instructions 12 and 16 requested by appellant, were erroneously refused.

The evidence, as previously stated, shows that it was appellant's duty to remove the scaffold after its purpose had been accomplished, and that its purpose had been completely accomplished prior to the time of the accident. The evidence also clearly shows that it was known to appellant's employees that the derrick was at the end of the scaffold only temporarily, and that it would be removed to an upper floor, and appellee must be presumed to have known this. The evidence is conclusive that, after the removal of the derrick, the west end of the scaffold was unsafe.

It is further shown by the evidence of appellant's witnesses that it was usual and customary for the employees of each of the two companies to walk on the scaffolds of the

other company. We cannot, in view of the evidence, hold, as matter of law, that appellant's negligence was not the proximate cause of the accident. That question was for the jury. It is true that the immediate cause—the cause next in time to the accident—was Kennedy's attempt to walk on the scaffold; but this is not by any means conclusive in favor of appellant.

In Pullman Palace Car Co. v. Laack, 143 Ill., 242, 261, the court say: "It is well settled that where the injury is the result of the negligence of the defendant and that of a third person; or of the defendant and an inevitable accident; or an inanimate thing has contributed with the negligence of the defendant to cause the injury, the plaintiff may recover, if the negligence of the defendant was an efficient cause of the injury. (2 Thompson on Negligence, 1085, section 3; Bishop on Non-contract Law, sections 39, 450, 452; Shearman & Redfield on Negligence, section 31, *et seq.;* Carterville v. Cook, 129 Ill., 152; Ice Machine Co. v. Keifer, *supra,* and cases cited.) In such case, the negligence of two independent persons resulting in injury to the third, where neither is sufficient within itself, both are to be treated in combination as the proximate cause of the injury." See, also, to the same effect: Elgin, etc., Traction Co. v. Wilson, 120 Ill. App., 371, 373; Byron Telephone Co. v. Sheets, 122 Ill. App., 6, 7.

In Consolidated Ice Co. v. Keifer, 134 Ill., 481, the court quote with approval this language from Cooley on Torts: "In general, the negligence of third parties, concurring with that of defendant to produce an injury, is no defense."

L. Wolff Manfg. Co. v. Wilson, 152 Ill., 9, relied on by appellant's counsel, is not applicable. In that case the question of the barber's liability for placing the pole on the sidewalk was not involved. The court expressly say: "The primary question for the jury to determine being whether the defendant's servant was guilty of negligence which was the proximate cause of the injury, and their province being to further determine whether, by commission in doing some act which ought not to have been done, or by omission to

do some act which ought to have been done, the injury resulted, in either event the inquiry before them was with reference to the acts of the defendant's servant alone."

Whether resting the west ends of the boards on a cleat nailed to the plank on which the derrick rested, and from which it was liable to be removed at any time, was or not negligent construction; and whether or not the appellant was negligent in not removing all bricks and other material from the scaffold and the scaffold itself after its purpose had been accomplished and the derrick removed, were questions of fact to be determined by the jury. And the evidence showing that it was customary for the employees of each of the two companies to walk on the scaffolds of the other, it was a question for the jury whether appellant might have reasonably anticipated that some of the employees might attempt to walk on the scaffold in question, after its purpose had been accomplished and the derrick removed.

Appellant's counsel say, in their argument: "It was error for the trial court to overrule appellant's motion, made at the close of all the evidence, to instruct for the defendant, and to overrule appellant's motion to strike out the plaintiff's evidence on account of the variance pointed out." The only motion made by appellant at the close of the evidence, so far as appears from the abstract, or from the record, was to instruct the jury to find the defendant not guilty, and the court properly overruled that motion. No variance was pointed out or even suggested. Counsel for both parties tried the cause on the theory that the question whether appellant was or not guilty of negligence in respect to the platform, was a material question, and both introduced evidence bearing on that question. It is now too late to talk of variance.

Instructions 12 and 16 asked by appellant and refused by the court are as follows:

"12. If you believe from the evidence that the platform in question in this suit was built by Wells Brothers Company for their own use, and not for the use of others, in such a way that it could be and was safely used by them for the

purposes for which it was built; and that afterwards Oscar Daniels Company, or one or more of their employees, used the platform for their own purposes, without permission or license from Wells Brothers Company, and while so using it caused certain materials to fall from the platform and injure the plaintiff, he (the plaintiff), cannot recover for such injuries from Wells Brothers Company, and you must find the defendant not guilty."

"16. This is a civil suit, and in the determination of your verdict you are not judges of the law, but only of the evidence, and you must take the law from the court as laid down in his instructions; each and every instruction read to you is given by the court, and it is your duty, under your oath as jurors, to know what the instructions are before you bring in your verdict, and to honestly and impartially apply the evidence to the law as laid down in these instructions, given you by the court."

Instruction 12 is clearly erroneous. It proceeds on the assumption that although appellant may have been guilty of negligence, in the absence of which the accident would not have occurred, yet, if an employee of the Oscar Daniels Company caused the accident by using the scaffold for his own purpose, there could be no recovery. The decisions cited *supra* show that this is not the law.

We find no substantial error in instruction 16, but do not think its refusal reversible error. The court, by instruction 3, given at appellee's request, instructed the jury as follows:

"What the facts are in this case must be determined by the jury from the evidence, and having done so, then apply to them the law as stated in these instructions. The instructions given to the jury are and constitute one connected body and series, and should be so regarded by the jury; that is to say, they should apply them to the facts as a whole, and not detach or separate any one instruction from any or either of the others."

The judgment will be affirmed.

*Affirmed.*