CITIZENS SAVINGS TRUST COMPANY, APPELLANT, V. INDE-
PENDENT LUMBER COMPANY, APPELLEE.

FILED JUNE 7, 1920.   No. 20260.

1. Corporations: UNAUTHORIZED ACTS OF OFFICERS: RATIFICATION.   The unauthorized acts of an officer of a corporation may be ratified by the corporation by conduct implying approval and adoption of the act in question.   Such ratification may be express, or may be inferred from silence and inaction, and if the corporation, after having full knowledge of the unauthorized act, does not disavow the agency and disaffirm the transaction within a reasonable time, it will be deemed to have ratified it.

2. Guaranty: RELEASE: AFFIRMATIVE DEFENSE.   In an action upon a guaranty, the defense that the guarantor has been released for the reason that the debt of the principal has been extended without the knowledge of the guarantor is an affirmative defense which must be pleaded in order to be available.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE.   *Reversed.*

*Brown, Baxter & Van Dusen,* for appellant.

*Switzler, Goss & Switzler, contra.*

LETTON, J.

The defendant corporation was a stockholder in the Lumbermen's Cement & Brick Company of Kansas City, Missouri. On January 22, 1913, the cement company desired to obtain $28,000 additional working capital. In order to raise this amount it executed its notes to the Corn Belt Bank of Kansas City by a written guaranty to the amount of $2,000 each, signed by a number of its stockholders. The name of the defendant was signed by its vice-president to the guaranty thus, "Independent Lumber Co., of Omaha, by John W. Towle, V. Pres." The notes and guaranty were afterwards transferred to the plaintiff in this action. Afterwards other notes were executed for the same debt and these notes attached as collateral. Defendant's share of the obligation, if bound, remains unpaid, and this action is to recover the same.

The signature is not denied, but the defense is that Towle had no authority to execute the guaranty, that it has not been ratified, and that the Lumbermen's Cement & Brick Company and the Corn Belt Bank had full knowledge of the want of authority of Mr. Towle. The reply pleads ratification, and pleads that plaintiff is an innocent holder of the notes. The cause was tried to a jury, and a verdict rendered in favor of the defendant. Plaintiff appeals.

Mr. Towle was also a stockholder in the cement company individually, and was a director of that company. He is a director and vice-president of the defendant company, but according to the evidence takes no active part in the management of the business. Mr. Towle testified that he did not inform the manager or other officers of the defendant that he had signed its name to the guaranty until Mr. Millard, the president and manager of the company, after receiving a letter from Kansas City dated March 28, 1914, asked him about the transaction. Mr. Millard testified that he never knew of the guaranty until he received this letter. It appears

that second mortgage bonds were issued to secure the guarantors, and that some of these had been sent to Mr. Towle as security for the guaranty, and were still in his possession. The letter is from the secretary of the plaintiff to the Independent Lumber Company and in substance states that, at the special request of Mr. John M. Byrne, the plaintiff had extended accommodations to the Lumbermen's Cement & Brick Company to June 1, 1914, at which time there would be due $21,005.82, and that three of the signers to the guaranty agreement of January 22, 1913, had paid their proportionate part of the guaranty. Mr. Millard testified that when this letter was received he read or handed it to Towle, and asked him if he knew anything about it, and that at that time Mr. Towle told him the facts as to the signing of the guaranty, and told him about the bonds which were sent to him as collateral security. The original notes of the cement company were attached to the new note as collateral. The new note contains a provision that if the security should depreciate in value the cement company agrees to give additional security upon demand. It also provides that the trust company is authorized to apply on the debt any money of the maker in its hands on deposit, and any notes, drafts, accounts, bonds or stock of the maker held by the trust company, or in transit to it.

If the trust company had received prompt information that the defendant repudiated the guaranty, it might have at once demanded additional security or applied on the debt any securities it might have belonging to the cement company. An act performed for a corporation by an authorized person may be ratified by conduct, and it is the duty of one who learns of an unauthorized act committed in his name, or who desires to repudiate it, to disaffirm the transaction and refuse to be bound by it within a reasonable time, so that one who has relied upon the act may not be prejudiced.

Upon the question of ratification, the court instructed the jury in part as follows: "In determining whether or not the act of Towle in signing said guaranty was subsequently approved or ratified by the defendant company, you are instructed that an act done in behalf of a corporation by one of its officers having no original authority to perform such act may be ratified by the corporation by conduct implying approval and adoption of the act in question, and such ratification may be inferred from silence, or inaction, indicating acquiescence and consent, when it was its duty to speak or to object to the act complained of. The acts of an agent or officer of a corporation, which he was not originally authorized to perform, may be ratified by express action, or such ratification or approval may be by an acceptance of the act, or by acquiescence therein, or it may be inferred from the facts and circumstances shown surrounding the transaction."

The admissions of Towle and Millard show conclusively that the defendant was given full information as to the execution of the guaranty by the letter of March 28, and the conversation with Towle immediately after its receipt. Notwithstanding this, it took no steps to repudiate the transactions, to return the bonds, or in any wise to notify the plaintiff of its disaffirmance. Since after full knowledge the defendant continued to treat the transaction as valid until after the maturity of the note, and did not disaffirm it, there was an implied ratification of Towle's act. *Alexander v. Culbertson Irrigation & Water Power Co.*, 61 Neb. 333; *Rich v. State Nat. Bank*, 7 Neb. 201; *Johnston v. Milwaukee & Wyoming Investment Co.*, 49 Neb. 68; *German Nat. Bank v. First Nat. Bank*, 59 Neb. 7; *Pittsburgh, C. & St. L. R. Co. v. Keokuk & Hamilton Bridge Co.*, 131 U. S. 371. The verdict of the jury is contrary, to the instruction quoted; and must be set aside.

Defendant insists that any error occurring at the trial was without prejudice because the guaranty itself con-

tained a provision against extension after January, 1914. The case was not tried on this theory. No issue of this kind was raised by the pleadings nor tendered at the trial, and it cannot be considered on appeal. It is elementary that the release of a guarantor by an extension of time to the principal debtor is an affirmative defense which must be pleaded. The reason for this is obvious, since in reply to such a plea the plaintiff might be able to show that such a defense had been waived, or might make other defense. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

ALDRICH and DAY, JJ., not sitting.